UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

| | | |
|---|---|---|
| **PRISCILLASTEEN GRAHAM** | * | **CIVIL ACTION NO. 14-1041** |
| **VERSUS** | * | **JUDGE ELIZABETH E. FOOTE** |
| **CAROLYN W. COLVIN, ACTING COMMISSIONER, SOCIAL SECURITY ADMINISTRATION** | * | **MAG. JUDGE KAREN L. HAYES** |

**REPORT & RECOMMENDATION**

Before the court is plaintiff's petition for review of the Commissioner's denial of social security disability benefits. The district court referred the matter to the undersigned United States Magistrate Judge for proposed findings of fact and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). For the reasons assigned below, it is recommended that the decision of the Commissioner be **REVERSED and REMANDED for further proceedings.**

**Background & Procedural History**

Priscillasteen Graham protectively filed the instant application for Title II Disability Insurance Benefits on June 26, 2012. (Tr. 134-140). She alleged disability as of May 17, 2011, because of back, leg, and neck problems. (Tr. 165, 169). The state agency denied the claim at the initial stage of the administrative process. (Tr. 72-83). Thereafter, Graham requested and received a November 6, 2012, hearing before an Administrative Law Judge ("ALJ"). (Tr. 29-69). However, in a December 27, 2012, written decision, the ALJ determined that Graham was not disabled under the Social Security Act, finding at step five of the sequential evaluation process that she was able to make an adjustment to work that exists in substantial numbers in the national economy. (Tr. 13-25). Graham appealed the adverse decision to the Appeals Council.

Nonetheless, on April 16, 2014, the Appeals Council denied Graham's request for review; thus the ALJ's decision became the final decision of the Commissioner. (Tr. 1-3).

On May 25, 2014, Graham sought review before this court. Succinctly restated, she alleges the following errors,

(1) the ALJ erred by failing to find that her impairments met Listing § 1.04C of 20 C.F.R. Part 404, Subpt. P, Appx. 1; and

(2) for various reasons, the ALJ's residual functional capacity assessment is not supported by substantial evidence.[1]

### Standard of Review

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards. *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's decision is not supported by substantial evidence when the decision is reached by applying improper legal standards. *Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. at 401. Substantial evidence lies somewhere between a scintilla and a preponderance. *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991). A finding of no substantial evidence is proper when no credible medical findings or evidence support the ALJ's

---

[1] Counsel for plaintiff is reminded that memoranda should cite to specific *page* numbers, not exhibit numbers. *See* Sched. Order [doc. # 6]. In addition, counsel should avoid frequent **bolding** and gratuitous CAPITALIZATION of words, which, at best, distracts the reader, and, at worst, raises questions concerning the writer's confidence in the reader's ability to grasp the significance of the evidence and argument.

determination. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988). The reviewing court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner. *Greenspan v. Shalala*, 38 F.3d 232, (5th Cir. 1994).

### Determination of Disability

Pursuant to the Social Security Act ("SSA"), individuals who contribute to the program throughout their lives are entitled to payment of insurance benefits if they suffer from a physical or mental disability. *See* 42 U.S.C. § 423(a)(1)(D). The SSA defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). Based on a claimant's age, education, and work experience, the SSA utilizes a broad definition of substantial gainful employment that is not restricted by a claimant's previous form of work or the availability of other acceptable forms of work. *See* 42 U.S.C. § 423(d)(2)(A). Furthermore, a disability may be based on the combined effect of multiple impairments which, if considered individually, would not be of the requisite severity under the SSA. *See* 20 C.F.R. § 404.1520(a)(4)(ii).

The Commissioner of the Social Security Administration has established a five-step sequential evaluation process that the agency uses to determine whether a claimant is disabled under the SSA. *See* 20 C.F.R. §§ 404.1520, 416.920. The steps are as follows,

(1)   An individual who is performing substantial gainful activity will not be found disabled regardless of medical findings.

(2)   An individual who does not have a "severe impairment" of the requisite duration will not be found disabled.

(3)    An individual whose impairment(s) meets or equals a listed impairment in

>       [20 C.F.R. pt. 404, subpt. P, app. 1] will be considered disabled without
>       the consideration of vocational factors.
>
> (4)   If an individual's residual functional capacity is such that he or she can
>       still perform past relevant work, then a finding of "not disabled" will be
>       made.
>
> (5)   If an individual is unable to perform past relevant work, then other factors
>       including age, education, past work experience, and residual functional
>       capacity must be considered to determine whether the individual can make
>       an adjustment to other work in the economy.

See Boyd v. Apfel, 239 F.3d 698, 704 -705 (5th Cir. 2001); 20 C.F.R. § 404.1520.

The claimant bears the burden of proving a disability under the first four steps of the analysis; under the fifth step, however, the Commissioner must show that the claimant is capable of performing work in the national economy and is therefore not disabled. Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987). When a finding of "disabled" or "not disabled" may be made at any step, the process is terminated. Villa v. Sullivan, 895 F.2d 1019, 1022 (5th Cir. 1990). If at any point during the five-step review the claimant is found to be disabled or not disabled, that finding is conclusive and terminates the analysis. Lovelace v. Bowen, 813 F.2d 55, 58 (5th Cir. 1987).

## ALJ's Findings

### I. Steps One, Two, and Three

The ALJ determined at step one of the sequential evaluation process that Graham had not engaged in substantial gainful activity during the relevant period. (Tr. 18). At step two, he found that she suffers severe impairments of degenerative disc disease at L3-4. Id.[2] He concluded, however, that the impairments were not severe enough to meet or medically equal any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4, at step three of the process. (Tr.

---

[2] He also found that her medically determinable impairment of depression was non-severe. (Tr. 18-20).

20).

## II. Residual Functional Capacity

The ALJ next determined that Graham retained the residual functional capacity ("RFC") to perform light work, except that she cannot climb ladders, ropes, or scaffolds; is able to only occasionally climb ramps or stairs, crouch, stoop, kneel, or crawl; and stand and walk for six hours in an eight hour day, with the need to sit for ten minutes after every hour of standing and/or walking. (Tr. 20).[3]

## III. Steps Four and Five

The ALJ concluded at step four of the sequential evaluation process that Graham was unable to perform her past relevant work. (Tr. 24). Accordingly, he proceeded to step five. At this step, the ALJ determined that, as of the alleged disability onset date, Graham was a younger individual, but later changed age category to an individual closely approaching advanced age. *Id*. She had a limited education, with the ability to communicate in English. *Id*. Transferability of skills was not material to the determination of disability. *Id*. The ALJ then observed that given Graham's vocational factors, and if she had an RFC that did not include any non-exertional

---

[3] Light work entails:
> . . . lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

limitations, the Medical-Vocational Guidelines would direct a finding of not disabled. 20 C.F.R. § 404.1569; Rules 202.21 and 202.14, Table 1, Appendix 2, Subpart P, Regulations No. 4. (Tr. 24-25).

However, because Graham's RFC *did* include non-exertional limitations, the ALJ consulted a vocational expert ("VE") to determine whether, and to what extent her additional limitations eroded the occupational base for light work. *Id*. In response, the VE identified the representative job of cashier, light, *Dictionary of Occupational Titles* ("DOT") Code # 211.462-010 that was consistent with the ALJ's RFC and Graham's vocational profile. (Tr. 24-25, 65).[4]

## Analysis

**I.     Step Three**

Plaintiff contends that she meets the listing for disorders of the spine – specifically, Section 1.04C, which provides that,

> 1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> *          *          *
>
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 1.04C.

To establish that a claimant's injuries meet or medically equal a listing, the claimant must

---

[4] The VE testified that there were 810,011 cashier positions nationally and 15,908 in Louisiana, but the numbers had to be reduced by 50 percent because of the sit/stand option. *Id*. This incidence of work constitutes a significant number of jobs in the "national economy." 42 U.S.C. § 423(d)(2)(A); *Johnson v. Chater*, 108 F.3d 178, 181 (8th Cir. 1997) (200 jobs at state level and 10,000 nationally, constitute a significant number).

provide medical findings that support all of the criteria for a listed impairment (or most similarly listed impairment). *See Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir. 1990).[5] An impairment that manifests only some of the requisite criteria, no matter how severely, does not qualify. *Sullivan v. Zebley*, 493 U.S. 521, 530, 110 S.Ct. 885, 891 (1990). If the plaintiff fails to demonstrate the specified medical criteria, the court will find that substantial evidence supports the ALJ's finding that listings-level impairments are not present. *Selders*, 914 F.2d at 620.

The instant ALJ determined that Graham's impairment did not meet or equal Listing 1.04 because, *inter alia*, there was evidence that she had negative straight leg raise and normal lumbar range of motion. (Tr. 20). Further, for purposes of paragraph C, he determined that plaintiff was able to ambulate effectively. *Id*. Under the regulations,

> [i]nability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities. . . .

20 C.F.R. § Pt. 404 Subpart P, Appx. 1, § 1.00B(2)(b)(1).

Plaintiff contends that she is unable to ambulate effectively because she uses an assistive device – a cane. As recited above, however, the inability to ambulate effectively generally contemplates use of an assistive device(s) that limits the use of *both* upper extremities. *See* § 1.00B(2)(b)(1). Here, there is no indication that plaintiff uses two canes, a walker, or crutches. Moreover, no medical records confirm that any physician has ever prescribed a cane.[6] Rather,

---

[5] In determining whether a claimant's impairment(s) equals a listing, all evidence in the case record about the claimant's impairments and their effects are considered. 20 C.F.R. § 404.1526(c).

[6] Albeit, plaintiff testified that an emergency room doctor "suggested" she acquire a cane. (Tr. 59).

there is evidence that, even during one of her exacerbations, plaintiff was able to ambulate without assistance. *See e.g.*, Tr. 328.[7]

In sum, there is substantial record evidence to support the ALJ's step three determination that plaintiff's impairment is not of listing-level severity. *Selders, supra*. However, because this matter is being reversed on other grounds, *see* discussion, *infra*, plaintiff may re-urge this argument below.

II.  RFC

   a)   Chronology of Relevant Medical Evidence

Plaintiff does not challenge the ALJ's resolution of the effects of her mental impairment. Accordingly, the ensuing, non-exhaustive chronology focuses upon Graham's physical impairments.

On May 12, 2010, John Danzell, Jr. M.D. completed a Family Medical Leave of Absence Request Form. (Tr. 215-222). He indicated that Graham's condition may recur throughout her life. *Id*. He further indicated that when pain was severe, she might need to be absent from work. *Id*. He anticipated that she would experience one or two flare-ups during an unspecified period, with each event lasting one to three days. *Id*.

On May 25, 2011, plaintiff went to the emergency room with complaints of a fall injury. (Tr. 263-266). However, she exhibited a normal range of motion in all joints and extremities. *Id*. An x-ray of the lumbar spine showed minimal spondylosis, with small, marginal osteophytes at L3-4. (Tr. 212).[8] There also was minimal disc space narrowing at the L3-L4 level. *Id*.

---

[7] In fact, after this October 20, 2012, emergency room visit, plaintiff walked outside, got in her car, and drove off. (Tr. 330).

[8] A February 25, 2010, MRI of the lumbar spine showed paracentral disc protrusion extending to the neural foramina on the left at L3-L4, with ligamentum flavum hypertrophy and

Graham was discharged with diagnoses of sacral contusion and myofascial lumbar strain. (Tr. 263-266).

A May 31, 2011, progress note reveals that Graham experienced difficulty standing and sitting. (Tr. 202). Her gait, however, was smooth and steady while wearing four inch heels. *Id*.

Graham went to the emergency room on January 2, 2012, with complaints of hip and leg pain. (Tr.257-259). Her symptoms started about one week earlier and were aggravated by movement. *Id*. Straight-leg raise elicited pain at 15 degrees on the left side. *Id*. She had a limited active range of motion due to pain in her left leg. *Id*. She was diagnosed with back pain/sciatica. *Id*.

On January 16, 2012, Graham returned to the emergency room with recurrent back pain that was worsening. (Tr. 227). The pain was in her lumbar spine and gluteal region, and radiated to her left thigh, knee, and foot. *Id*. She described her pain as a 10/10. *Id*. Although her lumbar region was tender, she exhibited a normal range of motion in her cervical and thoracic spine. *Id*. She received a diagnosis for low back pain radiating to the left leg. (Tr. 223).

On February 28, 2012, plaintiff presented to the emergency room with complaints of leg pain. (Tr. 249-252). Her sciatica had worsened over the past few days. *Id*.

Graham attended physical therapy on March 27 and April 10, 2012. (Tr. 230-232). On the latter date, she was feeling pretty good, but sore from home exercise. *Id*. At that time, she had an antalgic gait, with no assistive devices. *Id*.

On June 26, 2012, plaintiff returned to the emergency room with complaints of chronic back pain. (Tr. 242-245). The latest episode began about one week earlier and radiated to her left foot. *Id*. Movement and walking aggravated her symptoms. *Id*. Nonetheless, she

---

mild central stenosis. (Tr. 214).

maintained a normal gait and 5/5 motor strength in all extremities. *Id.* Her sensory was grossly intact, with negative bilateral straight leg raise. *Id.* The hospital discharged her with a diagnosis of sciatica. *Id.*

In an August 22, 2012, To Whom it May Concern letter, E. Alan Webb, M.D. wrote that Graham had a history of cervical and lumbar disc disease since 2010. (Tr. 312). She had been evaluated by Drs. Goodman and Cavanaugh, orthopedic and neurological surgeons, respectively, with recommendations of medical management of her conditions. *Id.* Moreover, since May 2011, and an August 17, 2012, motor vehicle accident, her symptoms had worsened. *Id.* Webb explained that Graham was severely limited in her activities of daily living secondary to her neck and back pain. *Id.* Pending spine evaluation, he concluded that she was unable to perform her regular job duties and considered her disabled. *Id.*

On September 12, 2012, plaintiff was seen Nancy Germany, M.D. (Tr. 313-315). At that time, Graham's chief complaints were neck, low back, and left leg pain, plus headaches. *Id.* After explanation of the pain scale, she reduced her pain to 8/10. *Id.* Graham reported that she went to the emergency room to treat her pain via injections. *Id.* Since her car accident, she had experienced pain in her right, upper trapezius that radiated into the right upper extremity when she became tired, which occasionally caused her to lose her grip. *Id.* She reported left lower extremity paresthesis, especially when rising in the morning. *Id.* She had discontinued physical therapy because it was too painful. *Id.* Graham explained that she had purchased a back brace, left knee brace, and a cane. *Id.* Upon examination, cervical range of motion was severely limited secondary to pain or fear of pain. *Id.* Graham exhibited somewhat decreased range of motion in her back, apparently limited by pain. *Id.* She also had some generalized muscular tenderness with no palpable spasm. *Id.*

Dr. Germany diagnosed right trapezius strain with occasional subjective right upper extremity pain/radiculopathy; low back pain with radicupathy; insomnia; and depression. Germany felt that her primary issue at that time was depression. *Id.* Moreover, because of her mental symptoms and possible fibromyalgia, she was encouraged to avoid opiates. *Id.* Germany concluded that Graham was unable to work at that time. *Id.*

On September 26, 2012, plaintiff reported to Dr. Germany that she was almost 100 percent better. (Tr. 396). She no longer needed to wear her back or knee brace. *Id.* She also was feeling better, smiling more, and moving more naturally. *Id.* Graham reported that as long as she took her medications, her symptoms remained at bay – other than her occipital headaches. *Id.* She ambulated normally with a normal gait and no apparent stiffness. *Id.* Dr. Germany opined that, considering Graham's improved status, she could consider working outside the home if desired. *Id.*

However, Graham's improvement apparently proved short-lived, for on October 10, 2012, she returned to the emergency room with complaints of pain and decreased range of motion. (Tr. 325-335). Upon examination, range of motion in her back was painful, decreased with all movement, with no vertebral tenderness or muscle spasms. *Id.* Straight leg raise did not elicit pain in either lower extremity. *Id.* She received diagnoses for strain, low back strain, arthritis, and fracture sciatica. *Id.* Demerol markedly relieved her pain. *Id.*

On October 20, 2012, Graham went to the emergency room with complaints of low back pain that began two or three earlier and was radiating into her right hip. (Tr. 410-412). Her gait was steady, but slow due to pain. *Id.*

During a November 28, 2012, office visit with Dr. Germany, Graham reported that her medications and physical medicine treatments helped, but she wanted a prescription for a TENS

11

unit for home use. (Tr. 392-393). She continued to complain of some low back pain and left-sided thoracic pain. *Id*. Dr. Germany noted that her trapezius and cervical strain from her August 17, 2012, accident appeared to have resolved. *Id*. However, Graham's low back pain and depression appeared to be unchanged. *Id*. Dr. Germany agreed to have Dr. Nunley evaluate Graham for her preexisting low back pain. *Id*. She also agreed that Graham could remain off of work. *Id*.

      b)      Discussion

Plaintiff argues that the ALJ's RFC is not supported by substantial evidence because, *inter alia*, he failed to adopt the opinions of the treating physicians. Ordinarily, a treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with . . . other substantial evidence." 20 C.F.R. § 404.1527(d)(2). "'[T]he ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion.'" *Martinez v. Chater*, 64 F.3d 172, 175-76 (5th Cir.1995) (citation omitted). However, an ALJ cannot reject a medical opinion without an explanation supported by good cause. *See Loza v. Apfel*, 219 F.3d 378, 395 (5th Cir.2000) (citations omitted). Furthermore, "absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician *only* if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2)." *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000).

As recited earlier, plaintiff's treating physician, Dr. Webb, stated that she could not perform her regular work duties. Furthermore, for most of the period at issue, Dr. Germany also

agreed that plaintiff was unable to work.  Moreover, in 2010, Dr. Danzell indicated that plaintiff would suffer flare-ups at an unspecified frequency for the remainder of her life that might require her to miss work.

In his decision, the ALJ assigned several reasons for purporting to discount the effect of the physicians' impressions.  First, he recited the SSA maxim that a physician's statement that a claimant is unable to work is not accorded any special significance under the regulations.  *See* 20 C.F.R. § 404.1527(e)(1); *Frank v. Barnhart*, 326 F.3d 618 (5th Cir. 2003).  He also added that Dr. Germany's statement was inconsistent with her own examination findings.  (Tr. 23).  Finally, he declined to assign any material weight to Dr. Danzell's impression because the record did not support absences related to pain and Danzell did not specify how often the exacerbations would occur.  *Id*.

According to the record, however, Graham went to the emergency room at least five times in 2012 for exacerbation of her lower back pain.  Furthermore, during each of these visits, she typically reported that the exacerbations had lasted a few days.  If, as alleged, her pain was an 8 or 10/10 during these exacerbations, it stands to reason that plaintiff would not be able to work during these episodes.  This evidence tends to support Dr. Danzell's impression and undermines the ALJ's stated grounds for discounting it.

> In any event, when, as here,
>
> the ALJ determines that the treating physician's records are inconclusive or otherwise inadequate to receive controlling weight, *absent other medical opinion evidence based on personal examination or treatment of the claimant*, the ALJ must seek clarification or additional evidence from the treating physician in accordance with 20 C.F.R. § 404.1512(e).

*Newton, supra* (emphasis added)

The instant record does not include any other medical opinion from an examining source.

13

Therefore, the ALJ was obliged to re-contact the treating physicians to resolve his concerns. This, he failed to do. Furthermore, even if the ALJ *had* validly discounted the impressions of the three treating physicians, the remaining record is devoid of any medical assessment or corroborating evidence to support the ALJ's residual functional capacity determination.[9] Instead, it is apparent that the ALJ autonomously derived Graham's RFC, without the benefit of a cognizable medical opinion. \

In *Ripley v. Chater*, as here, the Commissioner argued that the medical evidence substantially supported the ALJ's decision. *Ripley v. Chater*, 67 F.3d 552, 557-558 (5th Cir. 1995). The Commissioner pointed to medical reports discussing the extent of plaintiff's injuries, including a four year history of back troubles. *Id*. However, without reports from qualified medical experts, the Fifth Circuit was unable to conclude that the evidence substantially supported the ALJ's residual functional capacity assessment because the court could not determine the "effects of [plaintiff's] conditions, no matter how 'small.'" *Id*. The only evidence that described plaintiff's ability to work was plaintiff's own testimony, which, when read in proper context, failed to support the ALJ's residual functional capacity assessment. *Id*.

The instant case is materially indistinguishable from *Ripley, supra*. The record is devoid of a medical source statement that supports the ALJ's RFC. Moreover, plaintiff's own testimony was not consistent with the ALJ's RFC. (Tr. 45-60). Under these circumstances, the court is compelled to find that the ALJ's assessment is not supported by substantial evidence. *See Williams v. Astrue*, 2009 WL 4716027 (5th Cir. Dec. 10, 2009) (unpubl.) ("an ALJ may not rely

---

[9] A disability examiner found that plaintiff retained a residual functional capacity for light work. *See* Tr. 77. However, a disability examiner is not an acceptable source or even a medical professional. *See generally*, 20 C.F.R. 404.1527(f), 416.927(f); 404.1513(d)(3).

on his own unsupported opinion as to the limitations presented by the applicant's medical conditions"); *Ripley, supra* (substantial evidence lacking where: no medical assessment of claimant's residual functional capacity, and claimant's testimony was inconsistent with ALJ's assessment); *Butler v. Barnhart*, Case Number 03-31052 (5th Cir. 06/02/2004) (unpubl.) (in the absence of medical opinion or evidence establishing that the claimant could perform the requisite exertional demands, the ALJ's determination is not supported by substantial evidence).

### III.   Step Five and Remand

Because the foundation for the ALJ's step five determination was premised upon an RFC that is not supported by substantial evidence, the court further finds that the Commissioner's ultimate conclusion, that plaintiff is not disabled, also is not supported by substantial evidence.

The courts enjoy the authority to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. 42 U.S.C. §405(g). When reversal is warranted, the matter is remanded with instructions to make an award only if the record enables the court to conclusively determine that the claimant is entitled to benefits. *See Ferguson v. Heckler*, 750 F.2d 503, 505 (5th Cir. 1985); *see also Rini v. Harris*, 615 F.2d 625, 627 (5th Cir.1980) (reversing and remanding with direction to enter judgment where the evidence was not substantial and the record clearly showed the claimant's right to benefits). The instant record is not so disposed. Plaintiff's residual functional capacity assessment remains indeterminate.

### Conclusion

For the foregoing reasons,

IT IS RECOMMENDED that the Commissioner's decision be REVERSED and REMANDED pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further proceedings consistent herewith.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, this 16th day of April 2015.

_____
KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE